Our next case is 524-1099, Pupil v. Herbert Shah. As I stated, I've got Ms. Lassie here on behalf of the defendant. I've got Ms. King here on behalf of the state. And just when you start, please state your name for the record and go right ahead. May I please the court, counsel? My name is Jennifer Lassie from the Office of the State Appellate Defender on behalf of Mr. Herbert Shah. There are two arguments raised in this appeal. And if time permits, I would like to devote time to both of those. First, the trial court erred in denying Mr. Shah's post-conviction petition after the evidentiary hearing because Mr. Shah demonstrated by a preponderance of the evidence that he was denying his constitutional right to effective assistance during plea negotiations. The trial court, in its order, found that it was clear and obvious that trial counsel failed to properly communicate that there was a plea offer for a cap of 10 years. While counsel told Mr. Shah that there was an offer for 10 years, the court found she failed to explain it was actually an offer for a cap of 10 years, meaning that Mr. Shah could have gotten less than 10 and could have gotten somewhere between 4 and 10 years. The state does not challenge that point on appeal, that finding, by the trial court. So any argument on that point has been forfeited. The state only argues that the trial court correctly found that Mr. Shah was not prejudiced, that he would not have taken the offer had it been properly conveyed. However... Because I think, if I'm remembering, is this the case where the defendant said, essentially, I'm not taking any plea, I'm not taking any deal or something to that effect? There was something, that statement was made at the 2020 Crankle hearing. However, that was before Mr. Shah was ever informed of the actual plea deal in this case, that it was a cap. At that point, he had only been told it was a finite amount of 10 years. And the court relied on those statements in making its ruling here. However, even then, at that Crankle hearing, Mr. Shah seemed to make it clear that he was nervous about going to trial a second time and commented that he only made it through the first trial by the grace of God. And then at the evidentiary hearing here, he explained he did not know there was a cap until post-conviction counsel gave that information to him. And at the evidentiary hearing here, he was adamant that had he known about that cap, he would have accepted that plea. And again, 4 to 10 years is different than a finite amount of 10 years. Additionally, Mr. Shah was prejudiced here. Not only did he not get the plea offer between 4 and 10 years, he went to trial and was facing up to 30 years. And he ultimately received a sentence of 22 on count 1 and a sentence of 10 on count 2. So he did get a sentence far in excess of what he was offered, had that offer been conveyed. So we would ask this court to find that the trial court did err in finding he wasn't prejudiced by counsel's failure to communicate the offer properly. Next, we ask this court to alternatively, if you don't rule in Mr. Shah's favor on Argument 1, we ask you to rule in his favor on Argument 2, where we assert that post-conviction counsel failed to comply with Rule 651C. Compliance with Rule 651C has to occur at some point during the proceedings, and here it did not. And I think no better evidence of that can be found than on pages 1618 to 1619 in the transcripts. The state goes on the record and says that it doesn't understand a claim that Mr. Shah made about Grady, one of the people involved in this case. And counsel responded, he did not know what the claim was about either. Post-conviction counsel did not know what the claim meant. Rule 651C requires counsel to consult with the petitioner to understand his contentions about his constitutional violations. And Rule 651C also requires counsel to properly shape those claims. So when counsel went on the record, he told the state on page 1619 that he did not know what the claim meant, and he said, I just think it can easily be addressed by the state. I don't mean that, I'm not trying to say fighting words here, but I just, I don't know how much clarification is needed. I mean, I guess just assume the most expansive thing, and I think the state can fashion a proper response. So counsel essentially shirked his duties and asked the state to interpret the claim in a way that most benefited Mr. Shah, and then respond to whatever the claim was that the state developed on its side, which is clearly not compliance with Rule 651C. That's just a complete shirking of counsel's duties. He should have known what the claim was from consulting with Mr. Shah, and that he should have put it into the proper form. And the Supreme Court in Addison makes that clear. Counsel did adopt that claim. Counsel explicitly stated so on the record, and counsel in his supplemental petition said that he was adopting the pro se claims. So Addison makes it clear when counsel does that, that means post-conviction counsel has determined the claim to have merit, and it also imposes an obligation on counsel to properly shape that claim once he's adopted it. And counsel failed to do that here. So we would ask this Court to preferably find in our favor on Argument 1, and find that Mr. Shah was prejudiced by plea counsel's failures, or alternatively to remand for further post-conviction proceedings under Argument 2. And unless this Court has questions. No questions. Mr. Hackett. No, thank you. It's not until you have your rebuttal. Go right ahead.  May it please the Court, counsel, Tamara Cain, on behalf of the appellee, State of Illinois, people of the State of Illinois. Now you've heard that Mr. Shah, the defendant, had two claims advanced in his appeal. The first claim is actually a two-part claim, and I want to address both of them. I will start with the allegation that Ms. Norris' performance was deficient and fell below that of a reasonable attorney. That was the finding of the trial court. We are instructed that we are to give deference to the findings of the trial court. We can't cherry-pick which of those we're going to use. The Court found it, so we're going to proceed with that finding. The Court also made many other findings that are entitled to great deference. I'm going to start with addressing the four-year unauthorized counteroffer. While Ms. Norris' performance may have been deficient, the defendant cannot establish prejudice under the second prong of Strickland v. Washington. The four-year counteroffer was not accepted by the State. Therefore, the defendant was not bound to any obligation under that counteroffer. However, Ms. Norris did testify to the Court that she did this in order to bring the State back to the table. And I'm paraphrasing her phraseology on that, which is exactly what happened. The State then came back with the 10-year cap offer. So the defendant was in no way prejudiced by the four-year counteroffer that was unauthorized. Now, moving to the 10-year cap offer, the Court found that Ms. Norris cannot remember advising the defendant of the 10-year cap. However, Ms. Norris did advise the defendant of the 10-year offer. In the Krenkel hearing, we hear a fair amount of discussion over that. She told the Court that she did it at the jail over the telephone because that's how she communicated with the defendant. The defendant even admits, he says, I had to hear it over the phone. So it's a bit disingenuous when later he says, I never heard that offer, because he's admitted on the record that he did hear it. He heard it over the phone, which had to be in jail. So the issue is not whether she gave him the 10-year offer, but whether she gave him the 10-year cap offer, which the Court has found she did not. So whether or not he is prejudiced by that is the real question on that. The Court, as I mentioned, made several credibility and factual findings. The Court found that Ms. Alfering, the Assistant State's Attorney, had no motivation to lie, and that she testified that she had listened to the defendant's jail calls. After the first trial, before the second trial, he evidenced in his jail calls that he was confident he could win. He wasn't taking a plea. He wasn't interested in pleas. He wanted his trial. He also believed that he would win that second trial because the jury was not going to hear from the victim, and the victim did not testify. Now, Ms. Norris testified at that hearing, at the third stage hearing as well, and she said that when she told Mr. Shaw of the 10-year offer, it was very close to the second trial, but of course at jail, and that he was not at all interested in this 10-year offer. So the Court specifically found that Ms. Alfering, the Assistant State's Attorney, and Ms. Norris, his trial counsel, were consistent in their testimonies, and they were both generally credible. Now, he found that the defendant was not generally credible, and that his testimony had inconsistencies, and those are the crucial points that I want to make. The defendant later denies ever hearing the offer until the start of the second trial, but we know on the record he admitted to it. He also has made multiple statements about whether he would have taken the offer. At the Krankel hearing, he said, I would have considered it. Well, considered it is different than I would have taken it, and he's required to affirmatively state under Lafler and Hale that he would have taken the offer had he known of it, or been properly advised of it in this case. At the Krankel, I think the crucial phrase, and Justice Bowie mentioned it earlier, it's on page 1381 of the record, and I'm going to read because I want to make sure I get this quote right. I wasn't pleading to anything, so I don't understand how a plea deal was even negotiated or even talked about, because I didn't ask or even look into a plea deal. That's not ambiguous. That's pretty plain. If he was so nervous about whether he was going to win this second trial, why wouldn't he be interested in a plea deal? When he says, I wasn't pleading to anything, that's not the 4-year offer, that's not the 10-year offer, and that's not a 10-year cap offer. It's nothing. So, I believe the defendant cannot prove prejudice under the second prong of circling v. Washington, because he would not have taken any plea offer that was presented to him. Now, turning to counsel's second argument, the 651C issue, we have a couple of points here. The defendant's pro se petition initially alleged six claims. The trial court found, in its order dismissing them at second stage, that those claims were either foreclosed by race judicata from the defendant's first appeal before this court, or that appellate counsel was not ineffective because they were not viable claims, and then, therefore, appellate counsel had no duty to raise them. And they were dismissed at second stage. What was advanced at third stage are these, I'll say one issue, but it's really two, the 4-year counteroffer that was unauthorized and the 10-year cap. Those were advanced at third stage. And the reason that distinction is important is 651C, under people v. Pavello, does not apply to third stage hearings. Only second stage. So we know that Attorney Ortiz, the post-conviction counsel, did file a 651 certificate, and that's a common law record at page 435. And we know that he reviewed the record, and we know that he conferred with the defendant. Now, how do we know that? Because he tells the trial court, I'm adopting these six pro se claims because my client wants them heard and decided on. That explains his hesitancy, why he was not comfortable with them. But his client wanted them advanced, so he advanced them. However, he did add a meritorious claim. Well, what he believed to be a meritorious claim, ultimately the court ruled against him. Now, there was little else that Attorney Ortiz could have done to shape those first six claims into a viable claim at third stage. Because, or at any stage, because they were barred by res judicata. Nothing is going to fix that. And the other claims were ineffective assistance of counsel was alleged for appellate counsel. Those were not viable claims to start with, so appellate counsel could not be held accountable. So there was nothing more Attorney Ortiz could do to fix those claims. There was record citations attached, and there was an affidavit attached to those. In advancement of the second meritorious claim, and I use the term meritorious claim because that's what he said, he did another affidavit. The defendant signed it. Clearly, he conferred with the defendant. Now, it's mentioned in the brief, although it wasn't mentioned here, that it should be remanded under Suarez and that Suarez requires remand. But I would note for the court that Suarez only requires remand if the defendant's claims have not had the opportunity to be addressed and fully litigated. In this case, we know that's not true. The trial court gave due attention to the sixth pro se and entered a very detailed order to second stage, and that's at the common law record, 469 to 472, and then conducted a third stage on the remaining ineffective assistance claim. And so, Suarez is inapplicable, and I am asking this court to deny the defendant's appeal and affirm the trial court's ruling. Thank you. Thank you. Mrs. Patrick, do you have any questions? No, thank you. All right, thank you, counsel. Thank you. Your Honor, I would like to start with Suarez and work backwards, I think. I think the state misconstrues the holding in Suarez. I believe that the court there didn't say the case must be remanded if the claims didn't have an opportunity to be fully litigated. I think the holding was that the claims were not fully litigated. Claims cannot be addressed until compliance with 651C occurs first. So, for example, we don't look at the claims until they have been properly shaped, and the reason for that is they would be doomed to fail. So jumping to the merits of the claims doesn't circumvent that requirement that we have to comply with Rule 651C. They have to be properly shaped first before they can be looked at. So I think Suarez and Addison still apply here and require that the case be remanded. The state also commented that 651C doesn't govern third stage proceedings. That's correct. However, the record has to show that 651C compliance did occur at some point in the case. And when we look at this case, I believe this court will find that it did not occur. And, again, I think the best example is on pages 618 and 16, 1618 and 1619 of those transcripts, where counsel, post-conviction counsel, does not know what the claims are and has not properly shaped them for the state to respond to. So we feel pretty strongly that, you know, if this court does not find in Mr. Shaw's favor, it absolutely can. If it doesn't find it in his favor on Argument 1, it absolutely can on Argument 2. So the standard overview is difficult. It is manifest error with respect to the court's findings below regarding the PC. However, I think this court can find that the trial court's ruling was manifestly erroneous with respect to prejudice. When we look at the record, it is the critical 2020 hearing statements that the court looked to when deciding whether Mr. Shaw would have taken this plea deal. However, when he made those statements, he still had not been informed that it was actually a cap with a four- to ten-year range. So those statements and context, he still didn't know what the right plea deal was. He didn't know until post-conviction counsel told him years later. There's a few things. The state points out Mr. Shaw said he heard the offer over the phone. It's not clear who told him what over the phone. He did not say that it was trial counsel that told him an offer over the phone. He just said, I didn't know about the ten years. I had to hear it over the phone. It seems like it was not trial counsel who conveyed that to him because at the evidentiary hearing, trial counsel said she told him about a ten-year offer in person. And again, even if she did tell him about the ten-year offer in person, she did not recall ever explaining properly that it was actually a cap, meaning four to ten. And additionally, the trial court found that trial counsel failed to tell him it was a cap and that she only communicated it was a flat ten-year offer. With respect to the jail phone calls, those were not admitted at the evidentiary hearing. The only reason we know about them is because of the prosecutor relying on her recollection of those calls. They weren't actually played for the trial court. I think that covers everything. And again, we would ask this Court to note that those statements made at the Krinkle hearing occurred when Mr. Shaw still was not informed of the correct plea deal because counsel never properly explained it to him. So we would ask this Court to reverse the trial court's ruling on Argument 1 and remand so that Mr. Shaw can accept the plea deal if he wishes to do so, or alternatively, grant relief under Argument 2 and remand for additional post-conviction proceedings. Any final questions, Justice Hackett? No, thank you. This is Bob. Thank you. Thank you, counsel. Obviously, we will take matters under assignment. We will issue an order in due course.